# HARVEY & HACKETT

THE GRAYBAR BUILDING

420 LEXINGTON AVENUE, SUITE 2432

NEW YORK, NY 10170

---

(212) 972-8935

<u>VIA ECF and BY HAND</u>

January 13, 2016

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   <u>U.S. v. Sam Deluca – S3 14 Cr.782 (LAK)</u>

Dear Judge Kaplan:

The defendant, Sam DeLuca, is scheduled to be sentenced before your Honor today at 4:00 p.m.

The Court Order dated January 5, 2016, noted that your Honor expects definitive answers and requested creative and thorough assistance of counsel in determining the options available to the Court for sentencing the defendant.

On January 11, 2016, I spoke with Dr. Timothy Wilkin, the investigator with Cornell Clinical Trials Unit, and confirmed that he will be available by telephone on January 13, 2015 at 4:00 p.m.

Dr. Wilkin stated that if the defendant is incarcerated he cannot continue to participate in the clinical trial that, thus far, has kept him alive.

In addition, Dr. Wilkin told me that he will not inject himself in this process with Bristol-Myers Squibb and the Bureau of Prisons ("BOP") to permit the experimental drug to be administered to the defendant by BOP.

Notwithstanding Dr. Wilkin's statements, the Government has advised that a representative of Bristol-Myers Squibb told them that Bristol-Myers Squibb could provide the investigational drug to the BOP to be administered to the defendant in the event he is sentenced to prison. In addition, the Government requested the defendant's medical records on January 11, 2016 (list of current medications, history of specific time line of prior antiretroviral drug treatments, history and current viral load, and specific "genotype or hemotype" data). The attached records (Exhibit A) were sent to the Government and BOP on January 12, 2016.

The Honorable Lewis A. Kaplan
United States District Court
January 13, 2016
Page 2 0f 3

Upon information and belief, the Government believes that the BOP (i) can obtain and administer the investigative drug (and other medications) and (ii) treat the defendant's significant health issues.

I appreciate the Government's confidence that Bristol-Myers Squibb will provide the experimental drug under the FDA's expanded access program to the BOP. Unfortunately, there have been numerous articles regarding deathly-ill people who were denied access to other experimental drugs owned by Bristol-Myers Squibb.[a] Moreover, it appears the Government does not have any alternative suggestions with respect to sentencing the defendant in the event Bristol-Myers Squibb fails to provide the experimental drug.[b]

I suspect the BOP will represent to the Court that if it has access to the experimental drug, it will be able provide the necessary care to the defendant. Unfortunately, BOP has a spotty record at effectively administering drug therapies to terminally ill inmates. In this case, if the defendant receives even one (1) dose of his experimental drug (the defendant takes the experimental drug two times a day) an hour late, he could begin to build up a resistance to that drug regimen. In addition, if BOP, in fact, advances such a representation, one has to question how the BOP can possibly make such an evaluation of medical care after being in possession of the defendant's medical records for only one day.

As the Court is aware, the defendant was diagnosed 

The BOP personnel work under incredibly difficult conditions with budgetary constraints. Objectively, medical correctional units face significant challenges in their efforts to ensure quality medical care in the midst of numerous, and often competing, priorities around security and safety.[c] It is clear that the defendant's health issues are significant and require experimental treatment with constant monitoring to deal with a multitude of issues in a timely fashion. A simple general statement that that the BOP can provide care for the defendant should be questioned.

---

[a] See attached articles (Exhibit B) relating to various individuals seeking to obtain a Bristol-Myers Squibb experimental drugs.
[b] Obviously Bristol-Myers Squibb or any company could cease producing a drug or stop clinical trials; however, there is a financial incentive for a drug company to complete a clinical trial.
[c] Several years ago I was visiting a defendant in FMC Devens and observed a young child fall and become unconscious. Lack of personnel and security concerns resulted in the child not receiving medical care for a significant time period.

The Honorable Lewis A. Kaplan
United States District Court
January 13, 2016
Page 3 0f 3

Last week I was advised by the BOP that the issue of "intermittent confinement" couldn't be addressed at this time because the same depends of a security assessment of the defendant, and the assessment cannot be performed until the defendant is sentenced. However, upon information and belief, the BOP has contracts with local hospitals and correctional facilities that can house inmates, including inmates that have been sentenced to intermittent confinement.

Regrettably, I cannot obtain a definite answer with respect to whether a local hospital or correctional facility that has a contractual arrangement with BOP could accept Mr. DeLuca for intermittent confinement.

The Court told the attorneys to come up with definitive creative options for the Court. Unfortunately, even if the defendant suggested he spend weekends or several days a week confined to a local hospital under contract with BOP, the defendant cannot confirm to this Court that a specific hospital could agree to accept the defendant for intermittent confinement.

The defendant's counsel understands the Court's order to provide concrete options and not simply suggestions. However, as far as suggesting alternative type sentences involving prison confinement (intermittent or otherwise), I would require the assistance of BOP.

The defendant's criminal conduct was significant and cannot be overlooked, but the defendant should not be sentenced to death. The defense requests a very short adjournment together with a directive from the Court to BOP to have meaningful discussions with counsel regarding options available with respect to sentencing of the defendant.

In the event the Court is not inclined to grant the short adjournment, the defendant requests the Court order a BOP official to be available by phone to discuss the various options with respect to sentencing of the defendant.

Thank you for your consideration in this matter.

Very truly yours,

Thomas A. Harvey (8833)


cc:   AUSA Jared Lenow (via ecf & email)
      Michael Tafelski, Esq. – Northeast Regional Director BOP (via email)